**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHN CHRISTOPHER BLESSING

    Plaintiff,

v.                                             Case No. 3:19-cv-731-J-32MCR

MIKE WILLIAMS, in his official
capacity as Sheriff of the
Consolidated City of Jacksonville,
Florida, OFFICER TIMOTHY
JAMES, individually, and OFFICER
KATHLEEN CAMACHO,
individually,

    Defendants.

---

## **O R D E R**

    This civil rights case is before the Court on Defendants Timothy James and Kathleen Camacho's Motion to Dismiss (Doc. 19) and Defendant Sheriff Mike Williams's Motion to Dismiss (Doc. 18). Plaintiff John Blessing filed a consolidated response, (Doc. 29), and Williams filed a reply (Doc. 35).

**I. BACKGROUND**[1]

---

[1] These facts, assumed as true, are taken from the Amended Complaint. (Doc. 17). Plaintiff's consolidated response (Doc. 29) and his affidavit (Doc. 30) contain factual material outside of the Amended Complaint; thus, the Court has not considered those facts in deciding this motion. See Fed. R. Civ. P. 12(d) (requiring a court to convert a motion to dismiss to a motion for summary judgment if it considers matters outside the pleadings); R.F.J. v. Fla. Dep't of

Blessing's Amended Complaint alleges that in April 2016, he was attending a concert at Veteran's Memorial Arena in Jacksonville with several friends. (Doc. 17 ¶¶ 8–11). Defendants Timothy James and Kathleen Camacho, both officers in the Jacksonville Sheriff's Office ("JSO") at the time, were working the concert in an off-duty capacity. Id. ¶¶ 8–15. During the concert, a woman approached James and told him that "someone poured beer on her, bit her on the shoulder twice[,] and struck her in the back of the head with an open hand." Id. ¶ 9. The accuser identified Blessing as the perpetrator. Id.

Based on this accusation, James, who had not witnessed the event, grabbed Blessing "and physically removed him from his seat and began to drag him away." Id. ¶ 12. In response to Blessing questioning his removal, James "violently slammed [Blessing] to the ground using a straight arm take down causing . . . a broken arm and serious damage to [Blessing's] spinal cord." Id. ¶ 13. Blessing was arrested and taken to a secure area of the arena. Id. ¶ 14. Camacho, who was married to James, prepared the booking report and "claimed the accuser displayed bite marks . . . ." Id. ¶¶ 15, 19. Although there were numerous individuals who would have witnessed these events, James and Camacho did not interview anyone else. Id. ¶ 21. Blessing was charged with

---

Children & Families, 743 F. App'x 377, 380 (11th Cir. 2018) (stating that a district court must rule on a defendant's motion to dismiss based on qualified immunity even when presented with facts outside of the complaint that would normally warrant converting it to a motion for summary judgment).

three misdemeanors: battery, disorderly intoxication, and resisting arrest without violence. Id. All charges against Blessing were ultimately dropped. Id. ¶ 29.

The Amended Complaint also lists three incidents from the preceding year where James is alleged to have used excessive force, id. ¶¶ 33–35, and two incidents occurring after Blessing's arrest where James killed a pedestrian with his police cruiser and another where he was criminally charged with battery for his actions in arresting an underage suspect, id. ¶¶ 37–38. Further, the Amended Complaint lists many of James's social media posts possibly indicating a propensity for violence. Id. ¶ 36. Blessing alleges that James's use of force is part of JSO's "longstanding practice . . . of tolerating the use of force against individuals who are not resisting." Id. ¶ 39.

The Amended Complaint also lists eleven incidents between 2004 and 2017 where JSO employees allegedly used excessive force. Id. ¶¶ 40–50. Blessing alleges these events create a policy or custom of allowing excessive force within JSO.

The five count Amended Complaint asserts a 42 U.S.C. § 1983 excessive force claim against James (Count I), a § 1983 false arrest claim against James and Camacho (Count II), a § 1983 municipal liability claim against Williams (Count III), state law battery against Williams (Count IV), and state law false imprisonment against Williams (Count V). James and Camacho have moved to

3

dismiss Count II, the false arrest claim against them, asserting qualified immunity, (Doc. 19), and Williams has moved to dismiss all claims against him, (Doc. 18).

**II. ANALYSIS**

**A. James and Camacho's Motion to Dismiss**

James and Camacho seek dismissal of Count II, the § 1983 false arrest claim against them. They contend that they are entitled to qualified immunity because they had probable cause to arrest Blessing.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quotations omitted) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The government official has the initial burden of establishing his entitlement to qualified immunity by proving that he was acting within the scope of his discretionary authority. Estate of Cummings v. Davenport, 906 F.3d 934, 940 (11th Cir. 2018). Once proven, the burden shifts to the plaintiff, who, to overcome qualified immunity, must demonstrate that the government actor violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Blessing asserts that James and Camacho were not acting within their discretionary authority because they conducted a warrantless misdemeanor arrest without probable cause. Whether an arrest made without probable cause is outside the scope of an officer's discretionary authority is an unsettled question of Florida law. Compare Eiras v. Fla., 239 F. Supp. 3d 1331, 1344 (M.D. Fla. 2017) ("[T]he mere fact that an officer may have acted without probable cause is not enough to pierce the officer's immunity [under § 768.28(9)]."), with Lester v. City of Tavares, 603 So. 2d 18, 19 (Fla. 5th DCA 1992) ("[A] police officer does not have the discretionary authority to arrest a citizen whom the officer does not have probable cause to believe has committed an offense."). However, the Court need not resolve this issue because Blessing's argument that James and Camacho acted outside of their discretionary authority and his argument that they violated a constitutional right rely on the same premise: that the officers lacked probable cause to arrest him. (Doc. 29 at 13–16).

"An arrest made without probable cause is an unreasonable seizure," Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019), and unreasonable seizures violate the Fourth Amendment, U.S. Const. amend. IV. Probable cause is determined by "whether, at the time of the arrest, 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Huebner v.

5

Bradshaw, 935 F.3d 1183, 1187 (11th Cir. 2019) (alteration adopted) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999). Even if an officer lacks probable cause, he has not committed a constitutional violation, and is therefore entitled to qualified immunity, if he has arguable probable cause. Knight v. Jacobson, 300 F.3d 1272, 1274 (11th Cir. 2002).

"Probable cause exists when an arrest is 'objectively reasonable under the totality of the circumstances.'" Huebner, 935 F.3d at 1187 (quoting Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)). "An arresting officer is required to conduct a reasonable investigation to establish probable cause. An officer, however, need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" Rankin, 133 F.3d at 1435–36 (alterations in original) (citations omitted) (quoting Tillman v. Coley, 886 F.2d 317, 321 (1989)). "Importantly, in evaluating probable cause, an officer may not 'unreasonably disregard certain pieces of evidence' by 'choosing to ignore information that has been offered to him or her' or 'electing not to obtain easily discoverable facts' that might tend to exculpate a suspect." Cozzi v. City of Birmingham, 892 F.3d 1288, 1294 (11th Cir. 2018) (alterations adopted)

(quoting Kingsland v. City of Miami, 382 F.3d 1220, 1229, 1233 (11th Cir. 2004)).

"Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." Rankin, 133 F.3d at 1441. However, "officers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." Kingsland, 382 F.3d at 1228. Although not "every failure by an officer to discover 'easily discoverable facts' violates the Fourth Amendment . . . officers cannot 'conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts.'" Washington v. Rivera, 939 F.3d 1239, 1248 (11th Cir. 2019) (quoting Kingsland, 382 F.3d at 1229). Further, "an officer cannot ignore facts that would give a reasonable officer 'sufficient concerns.'" Id. (quoting Tillman, 886 F.2d at 321). In describing two cases where officers' investigations were insufficient to support a finding of arguable probable cause, the Eleventh Circuit stated:

> [I]n both Kingsland and [Tillman], the defendant officers consciously ignored information they already possessed that cast significant doubt on whether a defendant was guilty. In Kingsland, the officers took no investigative measures, even though the evidence they possessed did not give rise to the narrative they included in their report and used to arrest the plaintiff. In [Tillman], the sheriff willfully disregarded a large incongruity between what he knew about the suspect and what his undercover officer had told him. In both cases, the defendants possessed information giving rise to an exculpatory inference, and did nothing to examine "easily discoverable facts" that would confirm

7

or contradict that inference.

Washington, 939 F.3d at 1248.

However, an officer who, in investigating a battery, relies upon a 911 call by the accuser identifying the alleged assailant, a sworn statement by the accuser, and his personal interview of the accuser verifying the sworn statement, conducts a reasonable investigation despite not interviewing other potential witnesses. Huebner, 935 F.3d at 1188. In discussing the difficulty in investigating a battery, the Eleventh Circuit stated:

> Battery . . . will often be a he-said/she-said affair . . . . And for that reason, one could perhaps make the case that police should exercise discretion not to arrest in circumstances [where one person makes a sworn statement without corroborating evidence.] But that doesn't mean that they violate the Constitution when they do so.

Id. at 1189. Moreover, in Huebner, the Eleventh Circuit distinguished Kingsland as a case with "jarring" facts that went beyond officers merely turning a blind eye, "they affirmatively misrepresented their intentions and came dangerously close—if they didn't go all the way—to manufacturing evidence." Id. Thus, officers can rely on an accuser's sworn statement for probable cause, but they cannot choose to disregard "easily discoverable facts" that would create "serious doubts" about a suspect's guilt. See Washington, 939 F.3d at 1248; Huebner, 935 F.3d at 1190. And, obviously, they cannot manufacture evidence to support their preconceived notions. See Washington,

939 F.3d at 1248 (relying on Kingsland, 382 F.3d at 1229–33); Huebner, 935 F.3d at 1190 (same).

Here, as alleged, the facts and circumstances are these: An accuser approached James and told him that Blessing poured beer on her, bit her twice on the shoulder, and slapped her in the back of the head. (Doc. 17 ¶ 9). James did not interview anyone else in the area. Id. ¶ 21. Another concert attendee who was sitting with Blessing, attempted to explain to James that Blessing did nothing wrong, but he was threatened with expulsion, and then actually expelled from the arena. Id. ¶ 18. Camacho claimed the accuser showed her bite marks, but Blessing alleges that James and Camacho may have fabricated this information. Id. ¶ 19. Specifically, Blessing alleges:

> [D]ue to [James's] violent tendencies[,] he made the immediate decision to effect an arrest and seize [Blessing] without concern for probable cause. In that respect, [Camacho] claimed the accuser displayed bite marks but neither [James nor Camacho] documented or photographed that alleged evidence. Moreover, neither [James nor Camacho] did anything according to standard medical protocol, police procedure or JSO general orders to ensure the accuser was treated medically for the alleged bite wounds had that in fact actually occurred. This suggests that [James and Camacho] had fabricated the allegations that bite marks were visible on the accuser.

(Doc. 17 ¶ 19). Further, Blessing alleges that James "relied on the fact that his wife [Camacho] would back up his claims . . . ." Id. ¶ 32.

The Amended Complaint contains no allegations that James knew or should have known that the accuser was lying or otherwise unreliable. Cf. Jones

9

v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) ("[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later."). But the opposite is also true, absent some corroborating evidence, James had no way of knowing whether the accuser was trustworthy. See Huebner, 935 F.3d at 1187 (stating that officers must rely on "reasonably trustworthy" information when determining probable cause to arrest). Because an officer can rely on an accuser's statement but also must conduct a reasonable investigation to assure its trustworthiness, the allegations that: (1) James declined to interview a willing eyewitness, and (2) questioning whether James and Camacho were ever shown bite marks,[2] are important to whether James had arguable probable cause.

On a motion to dismiss, the Court must accept the facts alleged in the Amended Complaint as true and make all inferences in Blessing's favor.

---

[2] To be sure, evidence of physical injury is not required to have probable cause for a Florida battery claim; investigating officers can have probable cause even without looking for such evidence. See Huebner, 935 F.3d at 1187. However, physical injuries can be evidence of a battery—they are sufficient but not necessary. Here, James allegedly had no corroborating evidence besides the bite marks. Thus, their importance, if not fabricated, is that they are the only evidence beyond a single accusation. Cf. id. (finding arguable probable cause without evidence of injury where the officer was able to confirm the consistency of the accuser's two sworn statements with each other and with her 911 call).

Davenport, 906 F.3d at 937 (quoting Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016)). Although qualified immunity is a bar to suit and not just damages, the Court must nevertheless accept as true the factual matter pled in the complaint. Davenport, 906 F.3d at 937, 939–40 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Blessing's allegations that James and Camacho failed—arguably, refused—to interview forthcoming and readily available witnesses, and then possibly fabricated evidence to support their arrest, defeats their qualified immunity claim at the pleading stage. See Washington, 939 F.3d at 1248 (finding that Kingsland established that officers cannot deliberately ignore available evidence, and possibly create evidence, to support their narrative). If this scenario is proven, there was insufficient evidence to provide a reasonable officer with the belief that he had arguable probable cause to arrest Blessing. See Washington, 939 F.3d at 1248; Huebner, 935 F.3d at 1190; Kingsland, 382 F.3d at 1229–33. Therefore, James and Camacho are not entitled to qualified immunity at this stage of the proceedings because Blessing has viably alleged an absence of arguable probable cause. However, James and Camacho may assert qualified immunity at summary judgment if Blessing's allegations are not borne out.[3]

---

[3] Washington, Huebner, Kingsland, and Tillman were all decided on summary judgment. This means all of them proceeded past the motion to dismiss stage, where this case is postured.

**B. Williams's Motion to Dismiss**

Williams moves to dismiss all three claims against him, arguing that Blessing failed to plead: (1) any policy, custom, or practice that caused Blessing's constitutional violation—defeating the § 1983 claim; (2) that the force used to arrest Blessing was ordinary—defeating the battery claim; and (3) that James and Camacho had probable cause—defeating the false arrest claim. (Doc. 18 at 4–14).

### 1. The § 1983 claim against Williams states a claim.

A sheriff sued in his official capacity is effectively an action against the governmental entity the sheriff represents, in this case the City of Jacksonville. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1115 (11th Cir. 2005). A municipality, such as Jacksonville, is considered a person under § 1983, but its liability is limited to situations where a municipal policy caused the deprivation of rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held vicariously liable under § 1983); see City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51 at 61 (2011).

In addition to the alleged excessive force against Blessing, the Amended Complaint lists eleven other incidents where JSO employees allegedly used excessive force against individuals who were not resisting. (Doc. 17 ¶¶ 40–50). Three other cases from within the Jacksonville division of this Court have found that similar allegations of excessive force by JSO employees are sufficient to demonstrate a practice or custom. See Mims v. Williams, No. 3:19-cv-260-J-20JRK (M.D. Fla. Jan. 29, 2020) (Doc. 31) ("The detailed accusations regarding prior conduct, accepted as true, demonstrate the Sheriff ratified JSO's custom of using excessive force against arrestees . . . ."); Wilson v. Williams, No. 3:19-cv-822-J-34PDB, 2019 WL 6324265, at *4 (M.D. Fla. Nov. 26, 2019) ("Taking these allegations as true [the prior incidents of excessive force], . . . the Court concludes that the Complaint contains sufficient allegations to plausibly state a municipal custom to survive a motion to dismiss."); Martinez v. Williams, Case No. 3:17-cv-1319-J-20MCR (M.D. Fla. Sept. 26, 2019) (Doc. 74) (denying motion to dismiss municipal liability claim supported by similar allegations of prior incidents of excessive force, concluding that the allegations "demonstrate JSO officers have, since 2004, engaged in the practice of using excessive force on Jacksonville residents"). For the reasons stated in those opinions, the Court finds that the Amended Complaint sufficiently alleges a custom or practice by JSO of using excessive force for which Williams can be liable under § 1983.

### 2. Blessing has sufficiently alleged a battery claim against Williams.

Williams argues that Count IV, alleging battery, should be dismissed because it lacks "facts demonstrating that the force used by Officer James was unlawful and no more than the 'ordinary incidents of Plaintiff's arrest.'" (Doc. 18 at 12 (alteration adopted) (quoting Lester v. City of Tavares, 603 So. 2d 18 (Fla. 5th DCA 1992))). Although Williams is correct that "when making a custodial arrest, 'some use of force . . . is necessary and altogether lawful[,]'" Huebner, 935 F.3d at 1191, here the force used caused a broken arm and serious spinal cord damage against an individual who allegedly was merely questioning why he is being arrested. Taking the facts in the light most favorable to Blessing, there was neither an "ordinary" nor "necessary" use of force. Thus, Count IV sufficiently states a battery claim against Williams.[4]

### 3. Blessing has sufficiently alleged a false arrest claim against Williams.

Williams asserts that he is immune from Blessing's Florida false arrest claim because James and Camacho had probable cause to arrest Blessing. However, as explained, Blessing has sufficiently alleged that James and

---

[4] In certain circumstances, a state law battery claim can be subsumed into a false arrest claim. See Wilson, 2019 WL 6324265, at *5 n.5. However, these circumstances do not appear to be at issue here and were not raised by the parties.

14

Camacho did not have probable cause. Thus, Williams motion to dismiss Count V is due to be denied.

Accordingly, it is hereby

**ORDERED:**

1. James and Camacho's Motion to Dismiss Count II (Doc. 19) is **DENIED**.

2. Williams Motion to Dismiss (Doc. 18) is **DENIED**.

3. Not later than **March 27, 2020**, Defendants shall answer the Amended Complaint.

4. By that same date, the parties shall file a joint Revised Case Management Report. The stay of discovery (Doc. 31) is hereby **lifted**.

**DONE AND ORDERED** in Jacksonville, Florida this 5th day of March, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies to:

Counsel of record

15